3026414                     -FILED-

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

JUL 2 7 2018

ROBERT N. TRGOVICH, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| **Aaron Coates**<br>    *Plaintiff*<br><br>    v.<br><br>**Valeo Financial Advisors, LLC**<br><br>**Gibson Insurance Agency, Inc.**<br><br>**Fidelity Institutional, a division of FMR, LLC**<br><br>**Hoover, Hull, Turner LLP**<br><br>**Lutheran University Association, Inc. dba Valparaiso University and Law School**<br><br>**Marion County Superior Court**<br><br>**Marion County Clerk of Court**<br><br>**Marion County Prosecutor**<br><br>**Court of Appeals of Indiana**<br>    Judge Michael P. Barnes (*former*)<br>    Judge Edward W. Najam, Jr.<br>    Judge Paul D. Mathias<br>    Judge Elaine B. Brown<br>    Sara C. Blainbridge<br><br>**Clerk of the Indiana Appellate and Supreme Court**<br>    Greg Pachmayr<br>    "Laron" or "Aaron"<br>    "Michelle"<br><br>**John T. Wortman,** and **John C. Trott,**<br>individually and as owners and managers of Valeo Financial Advisors, LLC<br><br>**Gregory A. Fulk,** individually and as manager of Valeo Financial Advisors, LLC<br><br>      *(continued)* | **No.:** *TBD*<br>**3:18CV 574**<br><br>**CASE FILED:**<br><br>JULY 27, 2018<br><br><br>**CAUSES OF ACTION:**<br><br>RACKETEER INFLUENCED AND<br>CORRUPT ORGANIZATIONS<br><br>UNFAIR COMPETITION<br><br>DUE PROCESS<br><br>QUI TAM<br>    CIVIL RIGHTS<br><br>    FRAUD<br><br>    FORGERY<br><br>    OBSTRUCTION OF JUSTICE<br><br>    RACKETEERING<br><br><br>*JURY TRIAL DEMANDED* |

**Pamela K. Koehler,** individually, and as legal representative for Valeo Financial Advisors, LLC

**Andrew W. Hull, Kenneth J. Munson,** and **Wayne Turner,** individually, and as partners of Hoover, Hull, Turner, LLP, and legal representative for Valeo Financial Advisors, LLC

**Michael J. Blinn, Evan D. Carr,** and **Susanne (Heckler) Johnson,** individually, and associates of Hoover, Hull, Turner, LLP, and legal representatives for Valeo Financial Advisors, LLC

**Fortuna Gipson** and **Melodie M. Alexander,** individually, and as employees of Hoover, Hull, Turner, LLP

**Judge Heather A. Welch,** individually, and as judge for Marion Superior Court D01

**Mary G. Willis,** individually, and as Chief Administrative Officer for the Indiana Appellate and Supreme Court

**Judge Nancy H. Vaidik,** individually, and as Chief Judge of the Indiana Court of Appeals

**Mark A. Heckler,** individually, and as President of Valparaiso University

**David L. Ober,** individually, as Indiana State Representative, and as IURC Commissioner

**Camie J. Swanson Hull**

    *Defendants*

## PLAINTIFF'S COMPLAINT

*For wherever there is jealousy and selfish ambition, there you will find disorder and evil of every kind.*   James 3:16 NLT

### INTRODUCTION

1.  At a joint meeting of the Finance and Management Committees of Valeo Financial Advisors, LLC on April 18, 2009, participants agreed to institute dramatic compensation changes for Valeo's financial advisor employees. One hypothetical showed a 30% compensation fine for a Valeo advisor of 10 years, who failed to originate $30,000 of additional revenue above their prior year $200,000. [Exhibit 1]

2.  While Valeo would continue to keep the spoils generated by this employee, that was not enough. If the employee failed to increase revenues, Valeo would benefit even more at the expense of the employee. Valeo would then profit an additional $40,500 from the employee.

3.  To be clear, the advisor is not fined for a loss of revenues, which could endanger Valeo. This scheme is no different than the company towns and illegal wage practices of sweat shops of old. And this is why such practices are illegal and even criminal in many states, like Indiana, under IC 22-2-8-1.

4.  After the decision was made to implement this scheme, in September 2009, Coates was offered employment and provided a draft copy of prior employment and compensation agreements that did not disclose Valeo's plan to defraud employees starting January 2010. Valeo learned from their legal counsel in the fall of 2009 that such a scheme may conflict with Indiana laws, but Valeo determined to move

ahead anyway. In 2009, with the help of attorney Pamela Koehler, Valeo began extensive preparations for implementation in 2010, attempting to insulate top executives from potential liability. The key component of the plan was hiring Greg Fulk in May 2010, and having him take full responsibility for everything related to the wage fines (contracts, communications, payroll, calculation), so he could be blamed for the illegal action, if necessary.

5. Events and circumstances surrounding Aaron Coates' resignation at the end of 2015 exposed a risk for Valeo from the illegal scheme. Given that a contract, such as one for non-disclosure or release or waiver, is not legally binding on a party regarding illegal actions by the other party, Valeo was unlikely to benefit by pursuing settlement. Further, arbitration or mediation would present a host of professional issues to Valeo and their attorneys if discovered. Valeo decided on a more creative strategy hiring the most successful litigation firm in Marion County. With Coates in clear financial jeopardy, partially related to recent wage fines of $2,708.13, Hull and Blinn began laying the groundwork for a lawsuit, researching defenses to possible Indiana wage payment claims, and even inducing legislative changes that could be helpful to Valeo.

6. The surprising events that followed, exposed shocking and numerous failures by many officials and agencies, giving clear evidence that colluding to commit fraud, obstruct justice, and deny due process is a common and accepted practice, especially when trying to avoid being held accountable by the very law legal professionals are

supposed to hold in highest regard. Here, their actions caused indisputable and material harm to Coates.

**PARTIES**

AARON COATES                                                                "COATES"

7.  Plaintiff Aaron Coates is a resident of Goshen, Indiana.

8.  Coates became employed as a financial advisor with Valeo in September 2009. Plans for an office near his home never materialized, so Coates worked for Valeo from an office in his basement.

9.  In a last-ditch effort to avoid bankruptcy, Coates informed Valeo at the end of 2014 that he was resigning, so he could apply for 2015 ACA coverage prior to the deadline. This would avoid a minimum $9,000 increase in his family's 2015 healthcare costs, (38% of his take home pay)—assuming no doctor or hospital visits.

10. In mid-January 2015 Relevant Financial Advisors, LLC became approved to offer investment advice. Coates is still the sole operator, owner, and advisor. As of December 31, 2017, Coates managed just over $25 million for a small number of clients.

VALEO FINANCIAL ADVISORS, LLC                              "VALEO"

11. Defendant Valeo Financial Advisors, LLC is a large, nationally recognized investment advisory firm serving clients in more than 40 states from four offices (Indiana, Colorado, Michigan, and Minnesota).

12. Valeo's 2017 year-end regulatory filing shows over $3.3 billion managed for more than 1,500 clients including individuals, pooled investment vehicles, charities, and corporations. Valeo's assets increased by 37.9% or $919,603,993 from the end of 2016.

13. Valeo is consistently recognized on national rankings of the most successful, fastest growing advisory firms. In July 2018, Financial Advisor Magazine, ranked Valeo #89 nationally—the highest in Indiana.

14. Gregory A. Fulk is Chief Operating Officer (COO) of Valeo, and was hired in May 2010, and was engaged by Valeo as a consultant a few months earlier.

15. On information and belief, Defendant Valeo is an Indiana corporation headquartered in Indianapolis, and does substantial, continuous, and systematic business in the Northern District of Indiana.

GIBSON INSURANCE AGENCY, INC.                    "GIBSON"

16. Defendant Gibson Insurance Agency, Inc. is a 100% employee-owned insurance agency founded in 1933, and formed in Indiana.

17. Gibson has received numerous awards for growth, workplace, customer satisfaction, and best practices.

18. Timothy Leman is CEO of Gibson.

19. On information and belief, Defendant Gibson is headquartered in South Bend, Indiana and does substantial, continuous, and systematic business in the Northern District of Indiana.

FIDELITY INSTITUTIONAL, A DIVISION OF FMR, LLC                 "FIDELITY"

20. Fidelity Institutional is a division of FMR, LLC that provides clearing, custody, and brokerage services to clients including those of registered investment advisors.

21. Fidelity Institutional oversees more than $2.3 trillion in assets. Parent company FMR, LLC has $6.4 trillion total.

22. On information and belief, Valeo is one of the fastest growing and largest registered investment advisory firms that custodies most of their client assets with Fidelity.

23. On information and belief, Valeo representatives have served on exclusive advisory committees to Fidelity to advise Fidelity on services, systems, and costs. This affords Valeo access and influence not available to most smaller or stagnant firms.

24. On information and belief, Michael Durbin is President of Fidelity.

25. On information and belief, defendant Fidelity is headquartered in Boston, Massachusetts, and Fidelity does substantial, continuous, and systematic business in the Northern District of Indiana.

HOOVER, HULL, TURNER, LLP                         "HOOVER HULL"

26. Defendant Hoover, Hull, Turner, LLP is an Indiana formed limited liability partnership and law firm created by the January 2015 merger of Hoover Hull (founded in 2001) and a litigation group from Bingham, Greenebaum, and Doll.

27. Hoover Hull focuses on business litigation, mostly for high-stakes and complex business and commercial cases, most often representing larger commercial interests.

28. Hoover Hull represented Valeo in their three year lawsuit against Coates and the subsequent appeal.

29. Hoover Hull's only office is located in Indianapolis, Indiana.

30. On information and belief, Defendant Hoover Hull represents clients in many Indiana venues, federal and state, including the Northern District of Indiana, and has recent cases before the Court represented by multiple partners.

LUTHERAN UNIVERSITY ASSOC., INC. DBA                    "VALPO"
VALPARAISO UNIVERSITY AND VALPARAISO LAW SCHOOL

31. Defendant Lutheran University Association, Inc. dba Valparaiso University and Valparaiso School of Law is an independent Lutheran institution founded in 1859 offering liberal arts and graduate studies and is an Indiana formed nonprofit corporation. The law school was added in 1879.

32. Valpo's law school was censured by the American Bar Association in 2016 for admissions practices. Andrea Lyon, then dean of the Valpo Law School, said the censure is based on data collected in the spring of 2014 by the ABA, which examined the previous seven years (or 2007-2014). Lyon was quoted as saying, "VU was accepting students we shouldn't have been accepting." In November 2017, facing continuing strain, Valpo suspended admissions for 2018 and began exploring options such as a merger, hoping to keep the law school open.

33. Mark A. Heckler has been President of Valpo since 2008, most of the period examined on which the ABA based its censure. His daughter Susanne (Heckler) Johnson, a 2013 Valpo Law School graduate, joined Hoover Hull in 2015 as an associate attorney.

34. Defendants Welch, Vaidik, and Johnson are all graduates of Valparaiso Law School.

35. Valpo and Valpo Law School are located in Valparaiso, Indiana.

MARION COUNTY SUPERIOR COURT D01                    "MARION SUP. CT. D01"

36. Defendant Marion County Superior Court D01 is a Civil Court hearing cases in Marion County.

37. Marion Sup. Ct. D01 is currently presided over by Judge Heather Welch.

38. Following Hull's motion for change of judge, the Marion Clerk randomly assigned Marion Sup. Ct. D01 to hear Valeo Financial Advisors, LLC v. Aaron Coates 49D01-1505-PL-015418. Hull, Blinn, and Carr appeared for Valeo. Coates was self-represented.

39. Emily VanOsdol serves as Court Administrator to the Marion County Superior Courts.

40. Defendant Marion County Superior Court is located in Indianapolis, Indiana and is a court of the government of Marion County, Indiana.

MARION COUNTY CLERK OF COURT                    "MARION CLERK"

41. Defendant Marion County Clerk of Court handles filings and records for Marion County, Indiana courts, including Marion Sup. Ct. D01.

42. Myla Eldridge was elected to the position of Marion County Clerk of Court in 2014.

43. The Marion Clerk is located in Indianapolis, Indiana.

MARION COUNTY PROSECUTOR                                "MARION PROSECUTOR"

44. Defendant Marion County Prosecutor is the office of the prosecuting attorney for Marion County, Indiana.

45. Attorney Terry Curry is the currently elected Prosecuting Attorney for Marion County.

46. The Marion PA is an entity of Marion County, Indiana government and is located in Indianapolis, Indiana.

INDIANA COURT OF APPEALS                                "INDIANA CT. APP."

47. Defendant Indiana Court of Appeals is the appellate court for the State of Indiana, with Judge Nancy H. Vaidik serving as Chief Judge.

48. The Indiana Ct. App. heard the appeal of Aaron Coates v. Valeo Financial Advisors, LLC 49A04-1710-PL-2464 (Coates v. Valeo). Judges Michael P. Barnes, Edward W. Najam, Jr, and Paul D. Mathias heard Coates' appeal for the Court, affirming for Valeo on all counts.

49. Ms. Sara C. Blainbridge has been employed by the Indiana Ct. App. in Human Resources since April 2015.

50. Blainbridge A PDF document was posted to the court employment website with metadata showing it was created by on June 4, 2018 at 11:34 am

51. The appellant's brief was accepted on January 11, 2018 the same day Judge Barnes announced his retirement, effective June 1, 2018. Before his retirement, he publicly announced plans to serve as a senior judge.

52. The Indiana Ct. App. is located in Indianapolis, Indiana and hears cases at various venues around Indiana. Judge Barnes is a resident of South Bend, Indiana. On information and belief, Judge Brown resides in Greenwood, Indiana, Judge Najam resides in Bloomington, Indiana, and Judge Mathias resides in Fishers, Indiana.

CLERK OF THE IND. SUPREME AND APPELLATE COURT          "APPELLATE CLERK"

53. Defendant Clerk of the Indiana Supreme Court, Court of Appeals, and Tax Court is primarily responsible for 1) processing documents filed in appeals, 2) collecting associated filing fees, and 3) issuing orders and opinions of the Indiana Supreme Court, Court of Appeals and Tax Court.

54. Greg Pachmayr oversees the Appellate Clerk.

JOHN T. WORTMAN                                        "WORTMAN"

55. Wortman co-founded Valeo in May 2003 with Trott and they currently share majority ownership.

56. Wortman serves or has served on Valeo's management, finance, and investment committees, including on April 18, 2009.

57. On information and belief, Wortman attended or had input into Valeo executive meetings that took place on April 18, 2009, August 19, 2009, October 26, 2009. Further Wortman was in agreement with the recommendation to implement wage compensation fines.

58. On information and belief, Wortman was actively involved in conversations with Koehler regarding wage compensation fines, learned that they violate Indiana wage laws, and still determined to move forward creating a scheme to implement them.

59. Wortman is charitably active, and has served as Treasurer of Gleaner's Food Bank, Inc. and serves on the board of Valeo's charitable foundation.

60. Wortman serves as a Director of File This, Inc., a tech startup partially funded by Valeo advisors and clients through Valeo's private investment funds.

61. On information and belief, Defendant John T. Wortman resides in Carmel, Indiana.

JOHN C. TROTT                                    "TROTT"

62. Trott co-founded Valeo in May 2003 with Wortman and they currently share majority ownership.

63. Trott serves or has served on Valeo's management and finance committees including on April 18, 2009.

64. On information and belief, Trott attended or had input into Valeo executive meetings that took place on April 18, 2009, August 19, 2009, October 26, 2009.

Further Trott agreed with the recommendations to implement wage compensation fines.

65. On information and belief, Trott was actively involved in conversations with Koehler regarding wage compensation fines, learned that they violate Indiana wage laws, and still determined to move forward creating a scheme to implement them.

66. Trott served as Valeo's COO prior to Fulk's hiring

67. Trott was primarily involved in the conversations with Coates regarding contracts between August and September 2009. On August 2, 2009, Trott sent an email to Coates attaching "SAMPLE.Compensation Agreement (00086635).PDF" and "SAMPLE.Valeo Employment Agreement (00086634).PDF"

68. Over the next month Trott and Coates had numerous phone calls, emails, information exchanges, and a few meetings. On Tuesday, September 15, 2009, Trott sent Coates an "Employment Offer" with a starting date of September 15, 2009 that stated "Employment Agreement: You will be required to sign employment and compensation agreements."

69. Coates was provided an Employment Agreement with his information included and a few back and forth negotiations took place and was finalized on September 18, 2009. No formal discussion of executing a Compensation Agreement took place during that time.

70. On information and belief, Trott was fully aware of Valeo's plan to implement performance fines, that are illegal under Indiana compensation laws, and withheld

that information from Coates. Knowing this, Trott allowed the lawsuit against Coates to proceed.

71. On information and belief, Defendant John C. Trott resides in Noblesville, Indiana.

GREGORY A. FULK                                              "FULK"

72. Fulk was hired by Valeo in May 2010 as Chief Operations Officer (COO). He was contracted by Valeo a few months prior in a consulting arrangement.

73. Fulk was charged by Valeo management with oversight and execution of all operations, including all aspects of compensation. At the time wage compensation fines were implemented on employees, Fulk personally handled communication of the fine policy, calculating fines, generating payroll, and answering questions.

74. On information and belief, Defendant Gregory A. Fulk resides in Zionsville, Indiana.

PAMELA K. KOEHLER                                            "KOEHLER"

75. Defendant Pamela K. Koehler was admitted to practice law in the State of Indiana (#2021149) on November 3, 1997 and is currently in good standing.

76. As of Valeo's most recent entity filing with the Indiana Secretary of State on March 6, 2017, Koehler is listed as Valeo's Registered Agent.

77. On February 10, 2015 Koehler certified mailed, on behalf of Valeo a demand letter to Coates.

78. On information and belief Koehler continued to provide Valeo with additional legal services together with Hoover Hull until at least April 2017, but never filing a court appearance. In April of 2017, file metadata shows that Koehler converted one Word document to two separate PDF files, which were offered as evidence exhibits A1 and A2 support Valeo's Motion for Summary Judgment. The Motion claimed these agreements with Coates were from 2010. Metadata does not match origination from a scanned image, but clearly shows conversion from a Word Document by Koehler on April 28, 2017 at 5:27 p.m., later modified on May 2, 2017 at 8:11 am, the same day the Marion Clerk would have added a stamp of record to the PDF file.

79. On information and belief, Koehler advised Valeo in 2009 and 2010 regarding employment and compensation practices.

80. On information and belief, Koehler drafted a two-part employment contract for Valeo, containing both an Employment Agreement and a Compensation Agreement that Valeo offered to employees in 2010. The Compensation Agreement included provisions related to downward adjustments (fines) to compensation for not achieving certain increasing performance standards.

81. On information and belief, Koehler was still providing legal advice to Valeo though at least July of 2017.

82. On information and belief, Koehler resides in Zionsville, Indiana.

Andrew W. Hull                                          "Hull"

83. Defendant Andrew W. Hull was admitted to practice law in the State of Indiana (#1121849) on October 10, 1986 and is currently in good standing.

84. Hull is a partner at Hoover Hull.

85. Hull represented Valeo in its lawsuit against Coates and subsequent appeal.

86. Hull is renowned for representing primarily well-known, often multi-national corporations in various civil suits.

87. Hull is married to Defendant Camie Swanson-Hull

88. On information and belief, Hull resides in Fishers, Indiana.

Kenneth J. Munson                                       "Munson"

89. Defendant Kenneth J. Munson was admitted to practice law in the State of Indiana (#2307749) on November 19, 2001 and is currently in good standing.

90. Munson is a partner at Hoover Hull.

91. On information and belief, Munson participated in Hoover Hull efforts to represent Valeo against Coates, but never filed an appearance on behalf of Valeo.

92. On information and belief, Munson resides in Greenwood, Indiana.

Wayne C. Turner                                         "Turner"

93. Defendant Wayne C. Turner was admitted to practice law in the State of Indiana (#228949) on June 3, 1985 and is currently in good standing.

94. Turner frequently represents utility companies doing business in Indiana, often opposing consumers before various federal and state courts as well as regulators and appeals from regulatory rulings.

95. Recently, he has been representing Southern Indiana Gas and Electric Co., dba Vectren Energy. Citizen's Action Coalition of Indiana, Inc. filed suit against Vectren and the IURC seeking to overturn the IURC's approval of a proposal by Vectren to make substantial investments in various coal powerplants with costs partially offset by increasing rates. CAC argued that the IURC should explore using those resources to invest in cleaner energy or with an organization that is less susceptible to environmental sanctions.

96. On information and belief, Turner resides in Noblesville, Indiana.

MICHAEL J. BLINN                                                    "BLINN"

97. Defendant Michael J. Blinn was admitted to practice law in the State of Indiana (#2847349) on October 16, 2009, and is currently in good standing.

98. Blinn advised Valeo as co-counsel from the beginning of its lawsuit against Coates, until his motion to leave appearing on August 31, 2017 was filed and awarded the same day.

99. Blinn coincidentally left Hoover Hull immediately following his withdraw from Valeo's lawsuit to become in house counsel for Oerlikon.

100.    On information and belief, Defendant Blinn, listing his contact address on the Indiana Roll of Attorneys as Lafayette, Indiana resides in or near Lafayette. Blinn previously resided in Plainfield, Indiana while employed by Hoover Hull.

EVAN D. CARR                                              "CARR"

101.    Defendant Evan D. Carr was admitted to practice law in the State of
Indiana (#3397749) on October 11, 2016 and is currently in good standing.

102.    Carr was hired as one of six associate attorneys at Hoover Hull in August
2017.

103.    Carr filed an appearance in Valeo v. Coates on March 23, 2018.

SUSANNE (HECKLER) JOHNSON                       "HECKLER-JOHNSON"

104.    Defendant Susanne (Heckler) Johnson was admitted to practice law in the
State of Indiana (#3133864) on October 25, 2013 and is currently in good standing.

105.    Heckler-Johnson graduated from Valparaiso Law School in 2013 during
the period of data inspected by the ABA leading to censure of Valpo Law School.

106.    Heckler-Johnson is the daughter of Valparaiso University's President,
Mark Heckler.

107.    From August 2013 to August 2015, Heckler-Johnson served as a Law
Clerk for Judge Tim A. Baker, S.D. Ind., a 1989 Valpo Law 1989 graduate.

108.    In August 2015, Heckler-Johnson was hired by Hoover Hull as one of six
associate attorneys.

109.    Hoover Hull moved for a change of judge in Valeo v. Coates, which was
awarded over Coates' objection arguing improper venue. The suit transferred to
Defendant Welch, also a Valpo Law grad in June 2015.

110.    On information and belief, Heckler-Johnson, while not filing an appearance in Valeo V. Coates did work on behalf of Valeo, including filings to the court.

111.    On information and belief, Johnson resides in Indianapolis, Indiana.

FORTUNA GIPSON                                                    "GIPSON"

112.    Defendant Fortuna Gipson is employed at Hoover Hull as a paralegal and assistant to Hull.

113.    When Coates visited Hoover Hull in on June 28, 2017 to inspect the original contract, Gipson met with Coates and provided only the Employment Agreement, that was previously filed with the court. She did not produce the Compensation Agreement which continued to be withheld from Coates for nearly 3 years after numerous requests and constant objections to any procedural and hearing motions by Hull. After Coates requested the Compensation Agreement, Gipson left the room, Hull appeared, and Gipson did not return.

114.    Gipson actively participated in Hoover Hull's representation of Valeo.

115.    Gipson created the Marion Sup Ct. D01 Final Judgement in PDF form from a Word document on September 5, 2017 that was signed by Judge Welch with a date of September 20, 2017 and recorded the same day.

116.    On information and belief, Gipson resides in Fishers, Indiana.

MELODIE M. ALEXANDER                                             "ALEXANDER"

117.    Defendant Melodie M. Alexander is employed at Hoover Hull as a paralegal.

118.   On information and belief, Alexander resides in Indianapolis, Indiana.

JUDGE HEATHER WELCH                                "WELCH"

119.   Defendant Heather Welch is Judge in Marion County Superior Court Civil Division 1.

120.   Further she has been (something about public service and judge for family, having recused herself without explanation in one unusual matter).

121.   Welch graduated from Valpo Law School in 1994.

122.   In 2012, Welch was quoted as saying, "I wish I had known when I graduated law school that the average starting salary for a new lawyer was not $250,000 per year."

123.   On June 2, 2015, Welch was appointed to the Indiana Commercial Court Working Group by order of the Indiana Supreme Court.

124.   On January 20, 2016, the Indiana Supreme Court, by order, established the Indiana Commercial Court Pilot Project to not exceed three years, and commencing June 1, 2016. Welch was appointed as one of six judges, and the only in Marion County making her court the default venue for any commercial lawsuit in Marion County. Marion County has a larger volume of commercial cases than any other county in Indiana and often with more at stake making Judge Welch possibly the most important trial judge in Indiana.

125.   Given Welch's willingness to take on the overwhelming task of the Commercial Court of Marion County, her focus on maintaining her health, and her willingness to address media on judicial issues, Welch may aspire to a higher

judgeship. If true, it would be reasonable for Welch to consider the possibility that Valpo Law School closing could reflect negatively to a judicial selection committee. It follows that, Welch could be put in the difficult position of trying to persuade anyone with input over the future of Valpo Law School to keep it open—people like Mark Heckler, or even his daughter by extension, or others with material resources (greater than that of a judge) that could support Valpo.

126.   On information and belief, Welch resides in Indianapolis, Indiana.

MARY WILLIS                                                 "WILLIS"

127.   Defendant Mary Willis is an attorney licensed in the State of Indiana to practice law and currently in good standing (#15877-49).

128.   Willis served as Henry Circuit Court judge from 2002 to 2016.

129.   In February 2016, Willis was appointed by the Indiana Supreme Court to an advisory task force on public access to electronic court records as a judicial representative.

130.   Willis applied and was appointed to the new role of Chief Administrative Officer (CAO) of the Indiana Supreme Court in July 2016. Willis transitioned membership on the public records task force as CAO representative.

131.   Willis denied Coates' Praecipe for transfer from failure to rule under Indiana Trial Rule 53.1. While the ruling was stamped September 7, 2017 at 4:30 pm, electronic file information shows the file was not created until September 19, 2017 at 10:58 am.

132.    On April 19, 2018, the Indiana Supreme Court announced that Willis resigned in a letter from her position as CAO. An article by The Indiana Lawyer said they reviewed the letter and it offered no details about the reason for her resignation. As of July 26, 2018, no order removing Willis from this position appears to have been issued.

133.    On information and belief, Willis resides in Springport, Indiana.

JUDGE NANCY H. VAIDIK                                        "VAIDIK"

134.    Defendant Nancy H. Vaidik is Chief Judge of the Indiana Court of Appeals. She is serving her second three-year term as Chief Judge through 2019.

135.    Vaidik graduated from Valpo Law School in 1980.

136.    Given the much greater time commitment of Chief Judge, and her good health as an avid runner, Vaidik may aspire to a higher judgeship. If true, it would be reasonable for Vaidik to fear the potential closing of Valpo Law School reflecting negatively to a judicial selection committee. It follows that, Vaidik could be put in the difficult position of trying to persuade anyone with input over the future of Valpo Law School to keep it open—people like Mark Heckler, or even his daughter by extension, or others with material resources (greater than that of a judge) that could support Valpo.

137.    On information and belief, Vaidik resides in Valparaiso, Indiana.

MARK A. HECKLER                                        "HECKLER"

138.    Defendant Mark A. Heckler has been President of Valpo since 2008, most of the time examined on which the ABA based its censure.

139.   By virtue of his position as President of Valpo, Heckler serves on the Board of the Independent Colleges of Indiana, Inc. a public 501(c)(3) charity whose mission, according to its 2015 Form 990 is to "advance the cause of and support independent higher education in Indiana for 31-member colleges through fundraising, meetings to discuss common issues, carrying on basic research, and other incidental activities." The charity's net assets as of 12/31/2015 were $81,000,503.

140.   On information and belief, Heckler is involved in deciding whether to hire an investment advisor to manage these assets and if so, specifically what firm.  The charity has historically paid very round and consistent investment advisor fees-$60,000 in 2014 and $50,000 in 2013. Uncommon of many investment advisors that calculate fees as a fixed percentage on quarter-end assets, the fee correlates with Valeo's stated fee schedule, which is adjusted annually.  If Valeo has been considered to manage this substantial charity resource on behalf of colleges in Indiana, proper disclosures by Valeo and/or Heckler may have been necessary to avoid a potential breach of fiduciary duty.

141.   Heckler's daughter Susanne Heckler Johnson is employed as an Associate attorney at Hoover Hull.

142.   On information and belief, Heckler resides in Valparaiso, Indiana.

DAVID L. OBER                                                    "OBER"

143.   Defendant David L. Ober graduated in 2009 from Purdue University Calumet with a B.S. in Computer Graphics.

144.    In 2012, at age 25, Ober was elected to Indiana's 82nd district House seat, that was created by 2011 redistricting.

145.    In 2014, at age 27, Ober was appointed Assistant Majority Whip for the 119th General Assembly after winning an unopposed primary and the same Democratic opponent from 2012.

146.    In 2016, at age 29, Ober was appointed by House Speaker Brian Bosma as Chair of the House Utilities and Energy Committee. According to the Indianapolis Business Journal, "his ascension caused some gasps in the gallery. After all, he had not only never chaired a committee, but he also hadn't even served on that panel."

147.    In February 2016, Ober was appointed by the Indiana Supreme Court to an advisory task force on access to electronic court records. As of July 26, 2018, no order removing Ober from this position appears to have been issued.

148.    On January 29, 2018, Ober announced his resignation from the legislature with the intent to pursue appointment to the IURC, which would allow him to move to Indianapolis where his then fiancé lived.

149.    On March 7, 2018 Ober was honored by the Indiana House of Representatives for his service.

150.    On March 19, 2018, at age 30, Ober was chosen as an Indiana Utility Regulatory Commission (**IURC**) Commissioner by Governor Holcomb, over candidates such as the IURC External Affairs Director and the President of Wabash Scientific, Inc.

151.   A February 7, 2018 article in the Indy Star quoted Citizens Action Coalition director Kerwin Olson, "That revolving door has existed at the **IURC** for years and there are conflicts all over the place." The same article stated that advocates watching the interviews appreciated the questions, but feel it is somewhat pointless, and that the decision had already been made. Then the article said one member of the nominating committee indicated as much in response to a comment by an attending citizen asserting that it is a long day when the committee already knew the outcome. In response, the committee member shrugged and noted, "It is what it is."

152.   On information and belief, Defendant Ober resides in Albion, Indiana.

CAMIE SWANSON HULL                                    "SWANSON-HULL"

153.   Defendant Camie Swanson-Hull is a retired attorney admitted in the State of Indiana (2122-53), and is married to Defendant Andrew W. Hull.

154.   Swanson-Hull served as deputy attorney general and section chief for the Indiana Attorney General from 1994 to 1996.

155.   In 1996, Swanson-Hull was appointed to the Indiana Utility Regulatory Commission (**IURC**) by Governor Evan Bayh. She was an active member of the National Association of Regulatory Utility Commissioners (NARUC), chairing and serving on several committees.

156.   Swanson-Hull retired from the Indiana Utility Regulatory Commission on October 31, 2002.

157.   On information and belief, Swanson-Hull resides in Fishers, Indiana.

*****

158.   On information and belief, each and every Defendant was an agent, partner, representative, affiliate, employee, alter ego, or co-conspirator of each and every other Defendant, and in doing the things alleged herein, each and every Defendant was acting pursuant to such conspiracy and/or within the course and scope of such agency, representation, affiliation, control or employment and was acting with the consent, permission and authorization of the other Defendants. Moreover, on information and belief, each Defendant who joined the conspiracy after its formation ratified, adopted and is liable for all acts committed in furtherance of the conspiracy including those committed before such Defendant joined the conspiracy.

159.   Whenever the Complaint refers to any act or acts of Defendants, the reference shall also be deemed to mean that the directors, officers, employees, affiliates, controlling companies or agents of the responsible Defendants authorized such act while actively engaged in the management, direction or control of the affairs of Defendant, and each of them, and/or by persons who are the alter ego of Defendants, or while acting within the scope of their agency, affiliation, control, or employment. Whenever the Complaint refers to any act of Defendants, the references shall be deemed to be the act of each Defendant, jointly and severally.

*****

FACTS COMMON TO ALL COUNTS

160.    Following Coates' resignation, Fulk mailed Coates a letter dated January 15, 2015, demanding $37,476.96 minus $3,849.21 of compensation that Valeo was continuing to withhold for net damages of $33,627.76. The letter stated "...you have solicited non-excluded clients without paying the Removal Fee in direct breach of your Employment Agreement. You must immediately cease providing financial services to and soliciting any non-excluded client until the Removal Fee is paid for such clients." Attached to the letter was a Quarterly Performance Report ("QPR") from Q4 2014 that showed a Performance Standard Adjustment ("PSA"), or compensation fine of $1,938.92. Also included was an executed Employment Agreement, but no Compensation Agreement.

161.    Coates registration for providing investment advice was finalized on January 16, 2015. Soliciting anyone or providing financial services to any person as Fulk claimed, whether a current or former client of Valeo on or prior to January 15, 2015, would have been illegal.

162.    After Coates did not respond to Fulk's letter, Koehler sent a demand letter dated February 10, 2015, enclosing a materially altered but similar yet unsigned letter from Fulk, dated January 15, 2015. The demand letter did not reference the letter, and the QPR showing a fine from the original letter was not attached. The same Employment Agreement was attached.

163.    After Coates did not respond to Koehler's letter, Hull sent a demand letter dated April 16, 2015, that did not include a copy of Fulk's real or fraudulent January 15th letter. Hull did include a copy of the Employment Agreement, but no

Compensation Agreement, as referenced in the Employment Agreement as necessary to be the "Entire Agreement" had not been produced.

164.   On May 5, 2015, Blinn bills Valeo for "Evaluated possible risk under Indiana wage-payment statute arising from commission setoff." Given that another attorney in the firm Laurie Martin is an expert in this area, hard to understand why Blinn didn't just knock on her door, saving Valeo (now Coates) money.

165.   On Friday May 8, 2015, Valeo, represented by Hull, filed suit against Coates in Marion County Superior Court claiming breach of contract, breach of fiduciary duty, account stated.

166.   On June 8, 2015, Hull moved for an automatic change of judge in Valeo v. Coates. Coates filed an objection claiming improper venue on the same day he received the motion, but the Court awarded the motion the day before Coates received it. The Marion Clerk randomly assigned Judge Welch, a 1994 Valpo Law graduate. In August 2015, Hoover Hull hired Heckler-Johnson, a 2013 Valpo Law graduate, and daughter of Valpo President Mark Heckler.

167.   On June 16, 2015, Blinn billed "Considered additional Wage Payment Statute defenses and reviewed caselaw relating to same." Given that Coates had no counterclaims, what defenses needed to be researched? During June Blinn drafted a memo summarizing most of his findings to Valeo.

168.   On July 19, 2018 at 10:02 a.m., an order was last modified showing Judge Elaine B. Brown signed as Acting Chief Judge stamped July 18, 2018 3:37 p.m.

stating that "Appellant's Objection to Tax and Assess Costs to Appellant shall be treated as a motion to reconsider and is hereby denied."

169.   The Appellate Clerk received Coates' pro se filing "Appellant's Objection to Tax and Assess Costs to Appellant" by certified mail on June 5, 2018, but failed to process it until June 25th, and after the motion was awarded.

## JURISDICTION AND VENUE

170.   This action is brought as a civil rights case and related claims obstruction of justice and unfair competition and RICO; and therefore, subject matter jurisdiction lies within this Court, pursuant to 28 U.S.C §§ 1337, 1343 and 1357.

171.   Venue lies within this Court pursuant to 28 U.S.C. § 1391(b)(1). Gibson Insurance, Inc. is headquartered in South Bend, Indiana.

CAUSES OF ACTION

## Count 1: RICO

172.    Plaintiff hereby incorporates by reference the preceding paragraphs and repeats and realleges each of the allegations as if fully set forth here.

173.    On January 14, 2015, the day before Fulk mailed Coates the first demand letter, Ober, then age 27, authored House Bill 1469. The computer graphics major proposed to amend IC 22-2-5-2 "Failure to pay; damages; actions for recovery" that required employers who fail to pay employees to add 10% interest per day up to double the owed amount and to reimburse legal fees for the employee seeking recovery. The amendment would only allow added interest if the court determines that the employer who failed to pay "was not acting in good faith." Further costs and fees would be reduced to reasonable. Given that Fulk's letter admitted to withholding $3,849.21 of Coates' compensation, if this bill were passed, the change would be prejudicial to Coates and other similarly situated employees.

174.    On January 16, 2015, then Hoover Hull, LLP announced the addition of the litigation group from Bingham, Greenebaum, and Doll, including Wayne Turner, an attorney quite active in representation of utility companies.

175.    On Tuesday May 5, 2015 HB 1469 was signed into law three days before Hull represented Valeo in filing suit against Coates on Friday, May 8, 2015.

176.    Although pro se, Coates was able to clearly articulate in his Answer that if Coates was an employee,

"the Employment Agreement would be void (IC 22-2-5-1(a)), Plaintiff would have committed a Class C infraction, and Defendant would be entitled to damages as

well as the $3,849.21 of compensation that Plaintiff continues to withhold under the Agreement against Plaintiff's claim."

177.   On March 19, 2018, Ober was appointed as Commissioner of the IURC, a position previously held by Swanson-Hull.

178.   On information and belief, Ober, Turner, Hull, and Swanson-Hull colluded to offer Ober a quid-pro-quo for not only HB 1469, but also other initiatives favorable to various utilities. Vectren, who contributes substantial amounts to campaigns of top Indiana Republicans, and is represented by Turner, and may have more hearings before the IURC on its proposed expansion of coal power plants in Southern Indiana, certainly would benefit by having someone indebted to them.

**Count 2: Unfair Competition**

179.   Plaintiff hereby incorporates by reference the preceding paragraphs and repeats and realleges each of the allegations as if fully set forth here.

180.   Following registration approval, Coates filled out Fidelity's web inquiry on January 19, 2015 about becoming approved on their platform for custody of client assets. After not getting a response, on January 20th, Coates sent LinkedIn messages to Fidelity representatives Hugh O'Donnell, Tom Valverde, and John DiBenedetto. O'Donnell responded on Wednesday, January 21st, informing Coates that, "I do not cover Indiana. I will have a contact for you shortly."

181.   Meghan Hogan from Fidelity finally called Coates on Tuesday, January 27, 2015. Coates then followed up with an email the following day attaching documents Hogan requested. After a brief review, Ms. Hogan explained that their

asset minimum is $25 million, which it appears Coates would be under. She informed Coates that their next meeting to review and vet small advisors will take place on February 9, 2015, but there is no guarantee of a decision is not assured by that date.

182.   On Thursday, January 29, 2015, Coates contacted a different custodian, TD Ameritrade Institutional, and approved him by Monday, February 2, 2015. TD Ameritrade began establishing systems to generate client forms on February 9, 2015 with account documents being sent to clients on February 20, 2015.

183.   On information and belief, Valeo, with their considerable influence over Fidelity, appears to have induced Fidelity to unfairly compete against Coates by obstructing his determination of deciding on a custodian for his firm. It would have been perfectly reasonable for Fidelity to simply deny Coates' request for not meeting minimums, or provide a specific timeline for approval.

184.   On information and belief, Fidelity's neglect whether or not an intentional collusion with Valeo in furtherance of Valeo's original crime, caused Coates harm of loss of advisory fees from clients of not quite two weeks.

**Count 3: Unfair Competition**

185.   Plaintiff hereby incorporates by reference the preceding paragraphs and repeats and realleges each of the allegations as if fully set forth here.

186.   At various key times prior to and during Valeo's lawsuit, representatives of Gibson Insurance, Inc. reached out to Coates inviting him to have lunch or coffee. In each meeting the conversation was directed towards Coates' business and/or the

lawsuit with Valeo with the intent to provide this information to Valeo, and without disclosing this fact.

187.   Starting in 2014, Valeo began leveraging its broad geographic base of wealthy clients, and relationships with other professionals to refer growing numbers of potential customers to Gibson that resulted in new business and expanding geographic reach.

188.   On information and belief, the partnership between Valeo and Gibson expanded in 2015, and several Valeo executives switched their personal insurance to Gibson.

189.   On information and belief, and the timing of Gibson's attempts to arrange meetings with Coates in relation to other events, Valeo induced Gibson, leveraging its resources to further benefit Gibson in return for attempting to fraudulently acquire information from Coates that Valeo would then use for unfair competition and Hull would use to further deny Coates due process and violate his civil rights.

190.   To the extent that Valeo referred clients to which Valeo owes a fiduciary duty as an understood or expressed quid pro quo for information from Coates that Valeo would use in furtherance of its crime, Valeo clearly breached that fiduciary duty.

## Count 4: Unfair Competition, Civil Rights

191.   Plaintiff hereby incorporates by reference the preceding paragraphs and repeats and realleges each of the allegations as if fully set forth here.

192.   Coates' CFP Certification was up for renewal on May 31, 2015, just after Coates' resignation from Valeo.

193.   On information and belief, Fulk had reason to know that Coates CFP certification was set to expire on May 31, 2015. Coates had neglected to update his email address with the CFP Board of Standards so renewal emails were still going to Valeo. Fulk was responsible for reviewing all emails coming to Coates' former Valeo email address. The CFP Board of Standards begins sending renewal notifications up to three months before the two-year renewal date.

194.   Fulk, as a CFP Certificant was aware that at renewal a question is asked regarding claims of breach of fiduciary duty, and that if Coates were being sued for breach of fiduciary duty, even not to a client, it would jeopardize his certification.

195.   When Coates renewed and disclosed Valeo's claim against Coates of breach of fiduciary duty, the CFP Board Disciplinary and Ethics Commission ("DEC") opened an investigation. Responding to the investigation was an material burden on Coates, while trying to recover financially and get his firm up and running. But the true risk of harm, where a sanctioned former CFP Certificant is permanently listed will end a career.

196.   On information and belief, Fulk and Valeo sought to include the spurious claim of breach of fiduciary duty primarily for the purpose of denying Coates' civil rights and engaging in further unfair competition.

**Count 5: Unfair Competition**

197.   Plaintiff hereby incorporates by reference the preceding paragraphs and repeats and realleges each of the allegations as if fully set forth here.

198.   Valeo did not file Coates Form U5 until termination notice on the IARD regulatory system operated by FINRA until more than a year after Coates resigned. A firm is mandated to file this termination within 30 days, and faces an insignificant fine for failing to do so.

199.   When a firm fails to file the U5, the advisor still shows as employed by the prior firm. The advisor or next employer has no means to override and force the notice. For Valeo, Coates' name and reputation still provided benefit because Coates showed up in registration and on public listings such as Brightscope, Wealthminder, and Credio. While Valeo was suing Coates for having left, they intentionally misled regulators and the public to believe he was still employed. At the same time Valeo was actively working to hinder Coates' business, Valeo was actively and intentionally stealing the benefit of Coates' reputation.

200.   On information and belief, this action was clearly intentional for the purpose of unfairly benefitting Valeo at the expense of Coates. Valeo, without exception, filed U5 forms for young advisors within 30 days. But Valeo did not file a U5 for Celeste Collier, a well-respected, and experienced advisor until over four years after she left! And when they did, they intentionally used a much later date of December 16, 2016, instead of July 2012, likely hoping that Collier and/or regulators would not notice that Valeo does this on purpose.

201.   For the entire year of 2015, Coates received requests from the Indiana Securities Division about getting this corrected. Coates continually suggested that they directly contact Valeo, who retains sole responsibility, and who was suing Coates at the time over leaving Valeo.

202.   The U.S. Congress has been investigating abuses by former employers on the U5 Form, often used as a means to defame a former employee, or induce them to abusive agreements to avoid being labeled as terminated for cause. Wells Fargo has been notorious for this. Planet Money, a production of NPR has produced more than one episode on this.

## Count 6: RICO, Due Process, Civil Rights, Fraud, Forgery, Obstruction of Justice

203.   Plaintiff hereby incorporates by reference the preceding paragraphs and repeats and realleges each of the allegations as if fully set forth here.

204.   Parties aligned with Valeo, including Hoover Hull attorneys and staff were intimately and directly involved in preparing Welch's judgements. This is an undeniable violation of ex parte communication of the highest degree.

205.   On May 25, 2017 Coates filed a Motion for Leave to Amend Answer to Conform to the Evidence [Exhibit 2]. The following day, Hull moved for a hearing on Summary Judgment and Leave to Amend. Welch awards Hull's motion for a hearing.

206.   On June 13, 2017, Hull and Welch both presented at a morning ICLEF session. That same morning a file was recorded that was last modified that day at

9:39 am. The file was originally created on June 7, 2017 by Melodie M. Alexander and includes Hoover Hull's internal tracking ID. Welch signed the order denying Coates' Motion to Amend. That denial had to be overturned given that Hull had already requested a hearing.

207.   Welch's final judgement was created by Gipson on September 5, 2017 as a conversion from Word using the same method as other Hoover Hull PDF documents. Given that the involved parties do not understand how to wipe off metadata and other breadcrumbs, it is very unlikely that Welch would know how to change even a few words in a PDF and correct for spacing of lines and pagination. Hoover Hull drafted Welch's final judgement signed September 20, 2017.

208.   Following Welch's failure to rule within the required 30 days, Coates filed a Praecipe Application for Transfer to a new Judge per Ind. T.R. 53.1. The petition was postmarked August 22, 2017. The Indiana Supreme Court directive is very clear. The clerk of the trial court, here the Marion Clerk is required to enter the filing, then forward the praecipe and a copy of the CCS to the CAO, here Mary Willis. On August 30, 2017, when there was still no record of the filing either at the trial court or anywhere else, Coates contacted the Appellate Clerk by web form.

209.   A response email from the Appellate Clerk instructed Coates to contact the trial court. The day after calling the Marion Clerk, Welch issued an order denying the TR 53.1 transfer. The same Indiana Supreme Court directive suggests that a judge ruling on a TR 53.1 transfer violates judicial conduct, exactly what Welch did. Other licensed attorneys that became aware of this, each had a

professional responsibility to notify the judicial disciplinary commission. Coates contacted the Marion Clerk to notify them of the error suggesting that they change it. The Marion Clerk told Coates a request would need to be filed.

210.   Coates filed a motion to correct error by certified mail on August 31, 2017, serving it on Hull, Welch, the Marion Clerk, and the CAO of the Indiana Supreme Court. The motion included the directive from the Indiana Supreme Court and specifically noted that a trial judge is not to rule on TR 53.1 motions. The Marion Clerk recorded the date as September 6, 2017.

211.   On September 8, 2017 by email Coates updated the Appellate Clerk, and informed them that he would need to file a Writ with the high court the following week if the trial court does not correct the date. Not more than an hour later, a cause was opened with the Indiana Supreme Court 49S01-709-SJ-00566.

212.   On September 12, 2017 Welch entered a second denial of Coates' Motion to Correct Error that was drafted by Carr.

213.   On September 21, 2017, CAO Willis signed an order denying Coates TR 53.1 transfer request. The document was created on September 19, 2017 at 10:58 am, as a conversion from Word, and last modified on September 21, 2017. The order appeared on both the Supreme Court CCS and the Marion County CCS on September 21, 2017. The Supreme Court CCS shows a date of September 20, 2017, which is fraudulent. But worse is the fact that CAO Willis dated the ruling September 7, 2017. She backdated the order to 12 days before the document was created! The filing date is conveniently prior to Welch's second denial. [Exhibit 3]

214.   On January 11, 2018, the day Coates' appellate brief was certified, Judge Mike Barnes, one of the judges hearing the appeal, announced his retirement. CAO Willis resigned without providing any reason on April 19, 2018.

215.   During and after the appeal, Hull appears to have attempted to remove that nasty Pro Se label from Coates listing at the trial court for predictable reasons.

216.   On February 6, 2018, Hull filed a Motion for Supplemental Proceedings, and provided copies to the attorney representing Coates on appeal, certainly hoping he would appear at the hearing on March 23, 2018. Hull did not attend. Instead Carr filed appearance that morning just before the hearing on behalf of Valeo. Now four months later, no action has been taken as a result of that hearing.

217.   On May 30, 2018 Hull got creative, clearly with support from the Ind. Ct. Ap and the Appellate Clerk. Hull filed a Motion to Tax and Assess Costs to Appellant with the Appellate Court. The motion did not provide any amounts, or even an estimated amount. The motion only asked for remand to the trial court. Coates terminated his counsel in the appellate court the following day, and certified mailed a response on June 5, 2018 that was received by the court and Hull on June 7, 2018. Judge Vaidik, obviously unaware that a response was sitting in the Appellate Clerk's office, and the Appellate Clerk clearly incapable of keeping up with the very few paper filings now coming in since everything moved to e-file, granted the motion to remand, er to tax costs on June 12, 2018. Welch tried to move quickly, scheduling a hearing for July 17, 2018.

218.   Coates contacted the Appellate Clerk on June 25, 2018 asking where his objection is, and why it hasn't shown up. He was told by someone named "Aaron" or "Laron" that it is in process and will hopefully be complete soon. He then reassured Coates that once recorded it will be considered a motion to reconsider. Coates informed him that given everyone at that level has a law degree, this person knows that information is wrong. That the order must be vacated and heard again. A motion to reconsider presumes the first ruling was correct. In this situation that would not be true. That afternoon, the filing showed up, but is not actually available online [Exhibit 4]. On July 19, 2018, Judge Elaine Brown, as Acting Chief Judge because Judge Vaidik is out of the country, issued a new order, stating that Coates' objection was being treated as a motion to reconsider and was denied.

219.   On June 4, 2018, the Appellate Court posted a job opening for "Unrepresented Litigant Coordinator" with deadline to apply by June 18, 2018. This person is to handle processing all documents submitted by unrepresented litigants, reviewing filings, and updating the online case system. This would certainly provide a good excuse for mishandling numerous filings by Coates, coincidentally always resulting in material violations of due process. The PDF for the opening was created by sblainbridge (believed to be Sara Blainbridge).

220.   On July 9, 2018, the Appellate Court posted a job opening for Appellate Case Manager with a deadline to apply by July 23, 2018. "This person processes paper and electronic filings, including acceptance of documents, review for

compliance, handling associated filing fees, and notices of defect and returns." This PDF document was prepared by sblainbridge (believed to be Sara Blainbridge).

221.    On information and belief, numerous parties are all colluding, forging documents, engaging in fraud, obstructing justice, RICO violations, denying Coates right to due process, and civil rights now going on three years, having spent hundreds of thousands of dollars, over a claim of $37,476.96.

## Count 7: Due Process, Obstruction of Justice

222.    Plaintiff hereby incorporates by reference the preceding paragraphs and repeats and realleges each of the allegations as if fully set forth here.

223.    On March 8, 2018, the Marion Prosecutor received from Coates, via Priority Mail, a 4 pound, 5.3 ounce package containing over 400 pages of paper and a CD. On the top was an 11 page Claim of Crime against Hull and Valeo:

> Claim 1: Valeo considered and agreed to amend its compensation plan to include employee fines, in violation of IC 22-2-8.
>
> Claim 2: Prior to its planned January 1, 2010 implementation of "performance compensation reductions" for employees, Valeo appears to have learned that Indiana wage laws prohibit fines of employee compensation.
>
> Claim 3: Valeo delayed full implementation of the PSA plan until after hiring a COO who would be exclusively responsible for the PSA plan and fines.
>
> Claim 4: Attorney Andrew W. Hull could not have avoided learning of Valeo's crime.
>
> Claim 5: Attorney Andrew W. Hull knowingly acted, and used his work product, as an accomplice in the furtherance of Valeo's crime.

224.    Twenty-one exhibits totaling 389 pages were attached as was a video of a meeting between Coates and Hull where Hull first admits that the Compensation

Agreement was never executed. When Coates stated his intent to file an additional response to Hull's Motion for Summary Judgment, noting that no contract existed, Hull directly told Coates that is not possible, because the Motion is fully briefed.

225.   Coates was never contacted regarding this Claim of Crime and to his knowledge the Marion Prosecutor did not actively consider investigation or prosecution on any of the mentioned parties.

226.   Interestingly, on March 20, 2018, Hull filed a lengthy and precedent heavy Motion to Strike arguing that Coates raised new arguments in his reply brief and specifically addressed at length Valeo's compensation structure with a misleading statement to make it sound like the fine is only on a small portion of compensation. As has been shown here, the realized fines can be quite injurious.

227.   On information and belief, Hull learned of Coates' Claim of Crime filed with the Marion Prosecutor, even as the Marion Prosecutor chose not to pursue it. If the claim was not worth pursuing because it had no merit, then no disclosure to Hull or his proxy would be appropriate. If Coates Claim of Crime has possible merit, then the Marion Prosecutor disclosing anything to any party to the Claim or to their proxy outside the bounds of a full investigation is a clear RICO violation, leading to a denial of Coates' civil rights and right to due process, and is a noticeable obstruction of justice.

228.   One statement claims that "Coates has never challenged the sufficiency of Valeo's designated evidence to prove a prima facie breach..." Certainly doing so is quite difficult when Hull explicitly instructed Coates that on learning that no

contract existed, Coates was prohibited from further response to the Motion for Summary Judgment as it was fully briefed. Then Hull in the same motion cites precedent for the purpose of preventing "the nonmoving party from being sandbagged." Further, clear evidence of forgery likely exists in additional electronic files that are not accessible to Coates, even as Defendant, but only to licensed attorneys.

### CLAIMS FOR RELIEF

WHEREFORE, Plaintiff demands judgment in his favor on all Counts and against all Defendants for an amount well in excess of the jurisdictional amount required to guarantee a jury trial. Plaintiff requests that this Court determine an declare that Plaintiff is additionally awarded and afforded on all Counts:

a. Compensatory damages for all losses, together with interest, costs, and delay damages;

b. Defendants' profits in an amount according to proof at trial;

c. Statutory damages pursuant to related U.S. Codes, such as 18 U.S. Code § 1964 for RICO violations.

d. Punitive damages on all causes of actions to punish the Defendants for their outrageous and duplicitous conduct, especially those Defendants who are elected public officials; public Offices; and public Organizations;

e. Exemplary damages to set an example for others;

f. Equitable relief pursuant to 15 U.S. Code

g. Injunctive and other equitable relief inclusive of but not limited to injunction, referral to regulator bodies for investigation;

h. Costs and attorney's fees; and

i. Such other and further relief as the Court deems just, necessary, and appropriate under the circumstances allowed by statute.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims and issues so triable.

Respectfully submitted,
/s/ Aaron S. Coates
Aaron S. Coates, Plaintiff
18709  Taft Ct.
Goshen, IN 46528
T: 574-206-4454
E: acoates@relevantfinancial.com
/d/ July 27, 2018

## VERIFICATION

I, Aaron Coates, Plaintiff in this action, hereby declare that the statements of fact made in Plaintiff's Complaint are true according to my personal knowledge, except as to those matters stated on information and belief, and as to those matters I believe to be true.

Aaron S. Coates
/s/ Aaron S. Coates
/d/ July 27, 2018

## Spoilation Clause

Plaintiff demands that Defendants take necessary actions to ensure the preservation of all documents and things related to the case—in any format— hardcopy, electronic, audio, and visual, inclusive of but not limited to any communications between parties or proxies of the parties, audit trails of changes to electronic media and files, including identity of persons accessing the files and when, when files were uploaded to servers or websites for display—whether or not specifically addressed in this Complaint.

Lastly, Defendants are put on notice to preserve all things, as listed above, as well as information, materials, communications, or other content related to the averments in this case.

## CERTIFICATE OF SERVICE

A true and correct copy of Plaintiff's Complaint is being hand delivered to the Court for filing and thereafter will be served upon all Defendants in accordance with the Federal Rules of Civil Procedure.

**Valeo Financial Advisors, LLC**
c/o Gregory A. Fulk, COO
9450 N. Meridian St. Suite 300
Indianapolis, IN 46260

**Gibson Insurance**
c/o Timothy Leman, CEO
130 S. Main St., Suite 400
South Bend, IN 46634

**Fidelity Institutional**
c/o Michael Durbin, President
200 Seaport Blvd.
Boston, MA 02210

**Hoover, Hull, Turner, LLP**
c/o John Hoover
111 Monument Circle #4400
Indianapolis, IN 46204

**Lutheran Univ Assoc., Inc. dba Valparaiso University**
c/o Mark A. Heckler
President's Office
Valparaiso, IN 46383-6493

**Marion County Superior Court**
c/o Emily VanOsdol, Court Administrator
200 E. Washington St., T-1221
Indianapolis, IN 46204

**Marion County Clerk of Court**
c/o Myla A. Eldridge
200 E. Washington St., W122
Indianapolis, IN 46204

**Marion County Prosecutor**
c/o Terry Curry
251 E. Ohio St. #160
Indianapolis, IN 46204

**Court of Appeals of Indiana**
c/o Larry Morris, Administrator
115 W. Washington St., Suite 1080
Indianapolis, IN 46204

> Edward W. Najam Jr.
> Paul D. Mathias
> Elaine B. Brown
>
> Judge Michael P. Barnes (former)
> 6216 Winslow Ct
> South Bend IN 46614-6137

**Clerk of the Indiana Appellate and Supreme Court**
c/o Gregory R. Pachmayr, Clerk
State House, Room 216
200 West Washington St.
Indianapolis, IN 46204

**John T. Wortman**
12257 Montcalm St.
Carmel IN 46032-4420

**John C. Trott**
18509 Fairway Dr.
Noblesville, IN 46062

**Gregory A. Fulk**
4543 Golden Eagle Ct.
Zionsville, IN 46077-4601

**Pamela K. Koehler**
9374 Windrift Way
Zionsville, IN

**Andrew W. Hull**
14962 Southeastern Parkway
Fishers, IN 46037

**Kenneth J. Munson**
Hoover, Hull, Turner, LLP
111 Monument Circle #4400
Indianapolis, IN 46204

**Wayne C. Turner**
Hoover, Hull, Turner, LLP
111 Monument Circle #4400
Indianapolis, IN 46204

**Michael J Blinn**
Oerlikon Drive Systems
2400 Sagamore Parkway
Lafayette, IN 47905

**Evan D. Carr**
Hoover, Hull, Turner, LLP
111 Monument Circle #4400
Indianapolis, IN 46204

**Susanne A (Heckler) Johnson**
Hoover, Hull, Turner, LLP
111 Monument Circle #4400
Indianapolis, IN 46204

**Fortuna Gipson**
Hoover, Hull, Turner, LLP
111 Monument Circle #4400
Indianapolis, IN 46204

**Melodie M. Alexander**
Hoover, Hull, Turner, LLP
111 Monument Circle #4400
Indianapolis, IN 46204

**Heather A. Welch**
6215 N. Tuxedo St.
Indianapolis, IN 46220-4443

**Mary G Willis**
188 E County Road 650 N
Springport IN 47386-9518

**Judge Nancy H. Vaidik**
Indiana Court of Appeals
115 W. Washington St., Suite 1080
Indianapolis, IN 46204

**Mark A. Heckler**
272 Bruntfield Ct.
Valparaiso, IN 46385-8010

**David L. Ober**
711 N. Orange St.
Albion, IN 46701-1519

**Ms. Camie Swanson-Hull**
14962 Southeastern Parkway
Fishers, IN 46037

**Mr. Curtis Hill, Jr.**
Indiana Attorney General
302 W. Washington St.
IGCS-5th floor
Indianapolis, IN 46204
              or
23742 Cortland Dr.
Elkhart, IN 46514

**Marion County**
c/o Mr. Andrew J. Mallon, Chief Attorney
City-County Building, 1601
200 E. Washington St.
Indianapolis, IN 46204

*Respectfully submitted,*
/s/ Aaron S. Coates
Aaron S. Coates, Plaintiff
18709  Taft Ct.
Goshen, IN 46528
T: 574-206-4454
E: acoates@relevantfinancial.com
/d/ July 27, 2018