UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| AARON COATES, )<br>        Plaintiff, )<br>           v. )<br>VALEO FINANCIAL ADVISORS, LLC, )<br>*et. al.*, )<br>        Defendants. ) | Case No. 3:18-cv-574-JD-MGG |

**BRIEF IN SUPPORT OF HHT DEFENDANTS'**
**<u>MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>**

Pursuant to Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6), Hoover Hull Turner LLP, Andrew Hull, Camie Swanson-Hull, Kenneth Munson, Wayne Turner, Michael Blinn, Evan Carr, Susanne Johnson, Fortuna Gipson, and Melodie Alexander (collectively, the "HHT Defendants"), seek dismissal of all counts alleged against them with prejudice. Presumably, those are Counts 1, 3, 6, and 7—though, as set forth below, it is difficult to discern what Coates is claiming against whom, or on what legitimate basis any claim is made.[1]

## INTRODUCTION

Coates alleges a vast conspiracy that includes: Coates's former employer (Valeo Financial Advisors, LLC and certain of its employees); Valeo's legal counsel (Hoover

---

[1] Coates styles several claims as if part of a qui tam suit. To the extent he intends this to be a qui tam suit, Coates is barred from asserting one. *See Georgakis v. Ill. State Univ.*, 722 F.3d 1075, 1077 (7th Cir. 2013) ("[T]o maintain a suit on behalf of the government, the relator … has to be either licensed as a lawyer or represented by a lawyer."); *U.S. ex rel. Zzymczak v. Covenant Healthcare Sys., Inc.*, 207 Fed. Appx. 731, 732 (7th Cir. 2006) (noting that the rule prohibiting *pro se* litigants from serving as qui tam relators operates to filter out frivolous litigation).

1

Hull Turner LLP and Andy Hull, but also certain of the firm's attorneys and paralegals who are alleged to have done nothing, along with Hull's wife, Camie); the trial judge who heard Valeo's claim against Coates, and concluded that Coates had breached his employment agreement; the Indiana Court of Appeals judges who affirmed the judgment against Coates and granted Valeo's motion to assess costs against him; the clerks of the trial and appellate courts; the Marion County prosecutor; a former legislator-turned-IURC commissioner; and, for some reason, Valparaiso University, its president, and its law school. The apparent aim of the conspiracy was for Valeo to obtain a judgment against Coates of about $37,000 plus attorneys' fees.

To say Coates's claims in this Court lack plausibility is an understatement—even under the looser pleading standard afforded *pro se* litigants. Construed in a light favorable to Coates, the complaint's loose-knit string of conclusory allegations and conspiracy theories still do not add up to a legal claim. They represent an effort by Coates to harm the reputations of anyone he believes has crossed him, and to impart collateral damage on his targets' employees, and in some cases family members. Presumably, this Court will be next in line to receive the warning Coates issued the Indiana Court of Appeals: "Should you choose to align yourself with failures of justice, you should not be surprised if a higher authority holds you accountable at the proper time." Exh. 1, at 5.[2]

---

[2] The documents here from the Court of Appeals proceedings are certified copies, and the trial court documents are true and accurate. Certified copies of the trial court documents will be in a supplemental filing. Copies of the documents can also be found online at public.courts.in.gov; the trial court case number was 49D01-1505-PL-015418, and the appellate case number was 49A04-1710-PL-02464.

2

The HHT Defendants respectfully request that this Court review Coates's complaint as best it can, and then dismiss Coates's claims with prejudice.

## STANDARD OF REVIEW

A complaint should be dismissed when it fails to state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive, a plaintiff's factual allegations must "raise a right to belief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. When reviewing a 12(b)(6) motion, the court accepts "as true all factual allegations in the complaint and draw[s] all reasonable inferences in favor of the plaintiff." *Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017). But conclusory statements and naked assertions are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original). "[D]etermining whether a complaint states a plausible claim for relief requires a reviewing court to draw on its judicial experience and common sense." *Id.* (quotations omitted).

"A plaintiff can … plead himself out of court if he pleads facts that preclude relief." *Data Research & Handling, Inc. v. Vongphachanh*, 278 F. Supp. 3d 1066, 1070 (N.D. Ind. 2017). Although courts ordinarily do not consider affirmative defenses as a basis for dismissal at the pleading stage, dismissal is appropriate "when it is 'clear from the facts of the complaint, and matters of which the court may take judicial

notice, that the plaintiff's claims are barred as a matter of law.'" *Parungao*, 858 F.3d at 457 (quoting *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2nd Cir. 2000). "Judicial notice of historical documents, documents in the public record, and reports of administrative bodies is proper," and will not convert a motion to dismiss into a motion for summary judgment. *Menominee Indian Tribe of Wis. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998). Relevant here, "the decision of another court or agency ... is a proper subject of judicial notice." *Opoka v. I.N.S.*, 94 F.3d 392, 394 (7th Cir. 1996); *see also Watkins v. United States*, 854 F.3d 947, 949-51 (7th Cir. 2017) (court could take judicial notice of an earlier state-court complaint and thereby dismiss based on the doctrine of res judicata). A court may also take judicial notice of "court filings and other matters of public record when the accuracy of those documents reasonably cannot be questioned." *Parungao*, 858 F.3d at 457.

Finally, although a *pro se* complaint is held to less stringent standards than pleadings drafted by lawyers, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), *pro se* litigants still must "make their pleadings straightforward so that judges and adverse parties need not try to fish a gold coin from a bucket of mud." *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003). This requires that the pleading "be presented with sufficient clarity to avoid requiring a district court or opposing party to forever sift through its pages ...." *Jennings v. Emry*, 910 F.2d 1434, 1436 (7th Cir. 1990). "[W]here the lack of organization and basic coherence renders a complaint too confusing to determine the facts that constitute the alleged wrongful conduct, dismissal is an appropriate remedy." *Stanard v. Nygren*, 658 F.3d 792, 798

(7th Cir. 2011). "Dismissal of a complaint on the grounds that it is unintelligible is unexceptional." *Garst*, 328 F.3d at 378.

## FACTS OF WHICH THIS COURT SHOULD TAKE JUDICIAL NOTICE

Valeo is a financial advisory firm. *Coates v. Valeo Fin. Advisors, LLC*, No. 49A04-1710-PL-2464, 2018 WL 1462385, at *1 (Ind. Ct. App. Mar. 26, 2018).[3] Coates began employment with Valeo on September 15, 2009. *Id.* In connection with his job, Coates signed an Employment Agreement providing, in part, that he would not solicit Valeo's clients during his employment and for two years after the employment terminated. *Id.* However, under certain circumstances (including payment of a "removal fee"), Coates could exempt clients from his restrictive covenant. *Id.*

Near the end of December 2014, Coates terminated his job with Valeo. *Id.* Despite his Employment Agreement, Coates solicited six clients, all of whom were subject to a removal fee. *Id.* On January 15, 2015, Valeo sent Coates an account reconciliation setting out each client's removal fee and the aggregate amount Coates owed, $36,476.96. *Id.* Coates never expressly objected to these fees, but he also never paid them. *Id.*

On May 8, 2015, Valeo filed a lawsuit against Coates, alleging breach of contract, breach of fiduciary duty, and account stated. *Id.* at *2. Two years later, on May 1, 2017, Valeo moved for summary judgment on all counts. *Id.* The trial court granted Valeo's motion. *Id.* On March 26, 2018, the Indiana Court of Appeals unanimously

---

[3] As set forth above, this Court may take judicial notice of the decisions of other courts. Doing so is particularly appropriate in this case, which is simply an improper continuation of a dispute already adjudicated by Indiana state courts.

5

affirmed the trial court. *Id.* at *3. The court of appeals concluded that "because Coates' appeal rests on arguments he did not make to the trial court and because he did not direct the trial court to the designated evidence he now asserts establishes genuine issues of material fact, he has waived his arguments on appeal." *Id.* at *2.

Thereafter, Valeo (by counsel) filed a Motion to Tax and Assess Costs in the court of appeals, seeking appellate attorney's fees and costs due under Coates's employment agreement. Exh. 2 Deciding to respond *pro se*, Coates mailed an objection to the court of appeals. *See* Exh. 1. In his objection, Coates raised some of the allegations now made in this Court—*e.g.*, that Valeo's lawyers had acted inappropriately by submitting proposed orders to the trial court, and that the trial court had awarded Valeo costs for motions that Valeo's counsel "knew to be frivolous." Exh. 1, n.3. Coates then explained he would not address the Motion to Tax and Assess Costs itself, but rather would "issue a warning" to the court of appeals to "[f]eel free to award [costs] at your own peril." *Id.* at 5.

The court of appeals initially granted Valeo's motion before it had reviewed Coates's objection. Exh. 3. After reviewing the objection, the court of appeals deemed it a motion to reconsider, which it then denied. Exh. 4. Coates filed this suit nine days later.

# ARGUMENT

1. **Count 1 (labeled "RICO") should be dismissed.**

    1.1 **Coates alleges a quid-pro-quo scheme, years in the making, involving Valeo's counsel, the wife of one of Valeo's lawyers, and a legislator-turned-IURC commissioner.**

Count 1 of Coates's complaint appears to allege a RICO conspiracy claim against David Ober, Wayne Turner, Andy Hull, and Camie Swanson-Hull (Hull's wife). "On information and belief," Coates alleges, "Ober, Turner, Hull, and Swanson-Hull colluded to offer [then] state legislator Ober a quid-pro-quo" for introducing legislation concerning wage disputes (HB 1469) and "other initiatives favorable to various utilities." Compl. ¶178. Coates alleges that, three years later, in exchange for that legislation, Turner, Hull, and Swanson-Hull managed to get Ober appointed to the Indiana Utility Regulatory Commission, "a position previously held by Swanson-Hull." *Id.* ¶177-178.[4]

House Bill 1469, the Ober-drafted legislation irksome to Coates, amended Indiana Code section 22-2-5-2 in order to allow an employee asserting a wage claim to obtain interest on the money owed only if the employer failed to act in good faith. *Id.* at ¶173. Coates alleges that on January 15, 2015, the day after Ober authored HB 1469, Valeo's Chief Operating Officer Greg Fulk mailed a demand to Coates for $33,627.75—a $37,476.96 removal fee minus a $3,849.21 offset. *Id.* at ¶¶160, 173. Coates alleges that the offset constituted a compensation fine that violates Indiana

---

[4] Coates's allegations do not purport to explain how the three could, or did, obtain a nomination for Ober from the nominating committee established by Indiana Code Chapter 8-1-1.5, and then a gubernatorial appointment for Ober to the IURC pursuant to Indiana Code section 8-1-1-2.

law. *Id.* at ¶¶ 5, 160. He also alleges that because Valeo's demand letter "admits" to withholding his compensation, passage of the Ober-drafted HB 1469 prejudiced him. *Id.* at ¶173.

Meanwhile, the day after Valeo's Fulk mailed the demand to Coates—two days after Ober authored HB 1469—Hoover Hull added lawyers from Bingham Greenebaum Doll to its firm, including Wayne Turner. *Id.* at ¶174. Turner actively represents utility companies such as Vectren—a company that appears in front of the Indiana Utility Regulatory Commission. *Id.* at ¶¶174, 178.

On May 5, 2015, three days before Valeo and its lawyers filed suit against Coates, HB 1469 was signed by the governor. *Id.* at ¶175. Three years later, Ober was appointed as a commissioner to the IURC, a position that Andy Hull's wife, Camie, last held in 2002. *Id.* at ¶¶156, 177.

These are the allegations underlying Coates's RICO claim against Ober, Turner, Hull, and Swanson-Hull. As set forth below, they do not plausibly suggest the existence of such a claim. Therefore, Count 1 should be dismissed.

### 1.2 Coates cannot plausibly allege a RICO claim resulting from the passage of HB 1469.

Set aside, for the moment, all of Coates's other failures to plead any facts supporting a plausible RICO claim; the bottom line is that Coates cannot allege any injury from the passage of HB 1469. The point of that bill, as alleged by Coates, was to limit the award of interest to Indiana plaintiffs who prevail on wage claims against their former employers (requiring the former employee to prove a lack of good faith before interest would be awarded). Under Coates's own theory, to assert any injury

he would have to have prevailed on a wage claim against Valeo and then been "wrongfully" denied interest on the resulting award as a result of the change in law. But Coates never has *asserted* a wage claim against Valeo, much less prevailed on one. *See* Exh. 5.

Coates has had a full opportunity to litigate the merits of any claim he had against Valeo—if he had such a wage claim, he was required to assert it as a compulsory counterclaim in the underlying state-court lawsuit. *See* Ind. Trial Rule 13. Coates could not even resurrect such a claim against Valeo today, for both statute-of-limitation and claim-preclusion reasons. *See* Ind. Code § 34-11-2-1 (two-year statute of limitations for wage disputes); *Wabash Valley Power Ass'n v. Rural Elec. Admin.*, 903 F.2d 445 (7th Cir. 1990) ("claim preclusion follows from a combination of (1) a judgment rendered by a court of competent jurisdiction, (2) on the merits, (3) in a suit between the same parties, where (4) the matter now at issue was, or could have been, decided"). In RICO terms, Coates has failed to allege *any* injury to his business or property, much less one caused by reason of a violation of 18 U.S.C. § 1962. *Haroco, Inc. v. Am. Nat'l Bank & Trust Co.*, 747 F.2d 384, 387 (7th Cir. 1984); *see also Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985) (RICO plaintiff only has standing if "he has been injured in his business or property by the conduct constituting the violation").

Moreover, to state a claim under 18 U.S.C. §1962(c), a plaintiff must allege four things: (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity. *Slaney v. Int'l Amateur Ath. Fed'n,* 244 F.3d 580, 597 (7th Cir. 2001). A Section

1962(d) claim targets "the *agreement* to violate RICO's substantive provision, not the actual violations themselves." *Slaney*, 244 F.3d at 600 (emphasis in original). A viable 1962(d) claim must allege that "(1) the defendant agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity, and (2) the defendant further agreed that someone would commit at least two predicate acts to accomplish those goals." *Id.*

All Coates has provided here—and all he ever could provide—is a conclusory statement that, "[o]n information and belief, Ober, Turner, Hull, and Swanson-Hull colluded to offer Ober a quid-pro-quo for not only HB 1469, but also other initiatives favorable to various utilities"—none of which apparently having any impact on Coates. But the Court is not obligated to accept conclusory allegations such as this or outlandish claims of racketeering based on "information and belief." *Iqbal*, 556 U.S. at 678; *U.S. ex rel. Bogina v. Medline Indus., Inc.*, 809 F.3d 365, 370 (7th Cir. 2016) ("'on information and belief' can mean as little as 'rumor has it that ….'"). For all these reasons, Count 1 should be dismissed.

**2.    Count 3 (labeled "Unfair Competition," but probably a §1983 claim as to Hull) should be dismissed.**

In Count 3 of his complaint ("Unfair Competition"), Coates alleges a scheme whereby Valeo induced representatives from Gibson Insurance, Inc. to (a) invite Coates to lunch, (b) engage Coates in discussions about his business and the lawsuit against Valeo, and then (c) provide Valeo the information Coates volunteered so that Valeo could unfairly compete against him. Compl. ¶¶186-189. As a threshold matter, it is unclear whether Coates actually is asserting this claim against any of the HHT

10

Defendants. Count 3 mentions only Andy Hull, and only then in passing: "On information and belief, … Valeo induced Gibson … to fraudulently acquire information from Coates that Valeo would then use for unfair competition *and Hull would use to further deny Coates due process and violate his civil rights*." Compl. ¶189 (emphasis added).

As to the HHT Defendants, then, it appears Coates is not asserting unfair competition, but a claim under 42 U.S.C. § 1983 resulting from Hull's representation of Valeo.[5] As a matter of law, such a claim is not plausible. To be liable under §1983, a person must have acted "under color of any statute, ordinance, regulation, custom, or usage" of a state, territory, or the District of Columbia. 42 U.S.C. § 1983. But there is no plausible allegation that Hull—representing Valeo—was a state actor, much less that he engaged in conduct that "can be said to be acting under color of state law." *Holl v. Otis R. Bowen Ctr. for Human Servs., Inc.*, No. 3:18cv2-PPS/MGG, 2018 WL 3389903, at *3 (N.D. Ind. July 12, 2018).

To the extent Coates really does mean to assert an unfair competition claim against Hull, there are no allegations to support that claim either. Although Indiana does not have a rigid formulation for claims of "unfair competition," it is implausible for such a claim to be based on the use of supposedly "confidential" information (which Coates does not describe) that the plaintiff has disclosed willingly. *Cf. Licocci v. Car-*

---

[5] Coates has not noted a specific civil-rights statute under which he is suing. But he has alleged jurisdiction under 28 U.S.C. § 1343, which is the jurisdictional counterpart to 42 U.S.C. § 1983. 20 Fed. Prac. & Proc. Deskbook §24 (2018). So, it appears Coates may be alleging a §1983 claim.

*dinal Assocs., Inc.*, 445 N.E.2d 556, 561 (Ind. 1983) (no protectable interest in information that is not kept confidential); *see also Biomet 3i, LLC v. Land*, No. 1:16-cv-00125-TLS-SLC, 2017 WL 1483461, at *11-12 (N.D. Ind. Jan 10, 2017), *report and recommendation adopted*, No. 1:16-cv-001215-TLS, 2017 WL 1483469 (N.D. Ind. Feb. 27, 2017) (claim of unfair competition in Indiana may be premised on either the misuse of confidential information or passing off another's goods or business as one's own). Yet, that is what Coates attempts to allege here. Compl. ¶186. Moreover, Coates offers no allegations supporting a theory that Hull is "competing" against Coates. For these reasons, Count 3 should be dismissed.

3. **Count 6 (labeled "RICO, Due Process, Civil Rights, Fraud, Forgery, Obstruction of Justice") should be dismissed.**

Although this claim involves a substantial number of parties, the allegations relevant to the HHT Defendants center on two allegations. The first allegation appears to be that, at times, the HHT Defendants ghostwrote Judge Welch's opinions and orders in the underlying litigation. *See* Compl. ¶¶102, 112, 115, 117, 204-207, 212. Here, Coates purports to assert a claim against the HHT Defendants for complying with Marion County Local Rule LR49-TR-5-203(E), which states that "[a]ll motions must be accompanied by a proposed order."[6] *See also Ind. Dep't of Envtl. Mgmt. v. Lake Cty. Solid Waste Mgmt. Dist.*, 847 N.E.2d 974, 983 (Ind. Ct. App. 2006) (noting trial courts may adopt proposed orders).

---

[6] Coates, of course, knows this, having submitted his own proposed orders in the underlying litigation. *See* Exh. 6, at 6, 12-13. It is reasonable to infer, then, that Coates is not complaining about the process of submitting proposed orders, but whose proposed orders the trial court chose to grant.

12

The second allegation appears to relate to Valeo's filing of the Motion to Tax and Assess Costs in the Indiana Court of Appeals. Yet, again, Indiana's rules of procedure expressly provide for such a filing. *See* Ind. Appellate Rule 67 ("Upon a motion by any party within sixty (60) days after the final decision of the Court of Appeals … the Clerk shall tax costs under this Rule."). On March 26, 2018, the Indiana Court of Appeals issued its memorandum order unanimously affirming the trial court's grant of summary judgment in Valeo's favor. Hoover Hull Turner LLP, as Valeo's counsel, thereafter filed the Motion to Tax and Assess Costs on May 24, 2018. Combining these allegations, Coates alleges a conspiracy where all the parties are "colluding, forging documents, engaging in fraud, obstructing justice, [committing] RICO violations, denying Coates' right to due process, and [violating his] civil rights." Compl. ¶221. Such a claim is implausible for numerous reasons.

First, requesting relief from the judiciary is immunized from any liability pursuant to the *Noerr-Pennington* doctrine. *Domanus v. Locke Lord LLP*, 847 F.3d 469, 483 (7th Cir. 2017) ("Whether the branch of government is the legislature, the executive, or the courts, the right to present one's viewpoint is protected by the First Amendment.").

Second, Coates utterly fails to identify which allegations support which of his many claims, or assert any claim with particularity. *See* Fed. R. Civ. P. 9(b). Rather, he takes some alleged facts, peppers them with colorful commentary, then purports to tie them together at the end with the claim that "numerous parties are all colluding, forging documents, engaging in fraud, obstructing justice, [and committing]

13

RICO violations, [leading to them] denying Coates['] right to due process[] and civil rights." Compl. ¶221. Regardless of how Coates's allegations are read, the existence of a conspiracy between a law firm, a trial judge, five Indiana Court of Appeals judges, and several members of those courts' staff simply is not plausible.

Third, at bottom, Coates's allegations amount to a challenge—in federal court—of a final judgment issued by the courts of Indiana. Such claims are barred by the *Rooker-Feldman* doctrine. That doctrine "prevents lower federal courts from exercising jurisdiction over cases brought by state-court losers challenging state-court judgments rendered before the district court proceedings commenced." *Mains v. Citibank, N.A.*, 852 F.3d 669, 675 (7th Cir. 2017). It can also be expressed by asking whether the federal plaintiff is alleging that the state-court judgment caused his injury. *Id.* (citing *Richardson v. Koch Law Firm, P.C.*, 768 F.3d 732, 733 (7th Cir. 2014)). Here, Coates attacks the validity of the trial court's orders and the trial court's final judgment. He attacks the Indiana Court of Appeals decision granting Valeo's Motion to Tax and Assess Costs. And he attacks Valeo's counsel Hull for filing a Motion to Strike. In short, all of Coates's allegations seek to undermine or overturn the state court's proceedings and judgment. But Coates, as the state-court loser, is prohibited from seeking the district court's "appellate" review of those state-court proceedings. *Mains*, 852 F.3d at 675. For these reasons, Count 6 should be dismissed.

4. **Count 7 (labeled "Due Process, Obstruction of Justice") should be dismissed.**

As to the HHT Defendants, Count 7 appears to allege that Valeo (through its counsel Hull) filed a Motion to Strike new arguments Coates raised in his appellate

14

reply brief, and that Hull allegedly included misleading statements about Valeo's compensation structure in that motion.

This Count suffers from deficiencies similar to those described above. Again, the claim concerns petitioning the judiciary for relief, which cannot form the basis of liability against Hull under *Noerr-Pennington*. Again, the claim arises from filing a motion contemplated by Indiana's procedural rules. *See* Ind. Appellate Rules 42 & 46(C); *Receveur v. Buss*, 919 N.E.2d 1235, 1239 n.6 (Ind. Ct. App. 2010) (issues not raised in an opening brief are waived for purposes of appellate review and may not be raised in a reply brief). Again, Coates seeks to re-litigate issues addressed by the state-court proceedings, contrary to *Rooker-Feldman* and principles of res judicata. Again, there is no plausible allegation supporting a RICO claim. Again, Coates points to no concrete injury arising from any alleged conduct. Finally, for good measure, there is no private right of action for "obstruction of justice." *Hanna v. Home Ins. Co.*, 281 F.2d 298, 303 (5th Cir. 1960); *Odell v. Humble Oil & Refining Co.*, 201 F.2d 123, 127 (10th Cir. 1953); *Scherer v. U.S.*, 241 F. Supp. 2d 1270, 1282 (D. Kan. 1994).

For these reasons, Count 7 should be dismissed.

## CONCLUSION

A straightforward contract suit, to which Coates mustered no defense and therefore lost, has evolved into this—a concerted effort to harass and malign Coates's former employer, its lawyers (along with their staff and family), and several members of the Indiana judiciary. The HHT Defendants respectfully request that this Court

put a swift end to it, dismiss the claims against them with prejudice, and grant them all other appropriate relief.

However, if the Court opts not to dismiss with prejudice, the HHT Defendants respectfully request that this Court issue the same warning to Coates that it did in *Straw v. Sconiers*, Case No. 3:14-cv-1772-JD, 2014 WL 7404065, at *5 (N.D. Ind. Dec. 30, 2014) ("[T]he Court notifies Straw that sanctions could be imposed should he attempt to pursue claims without sufficient factual and legal basis, as detailed by this Court herein.") (citing Fed. R. Civ. P. 11(b)-(c)).

Respectfully submitted,

*/s/ Michael A. Dorelli*

David J. Hensel (15455-49)
dhensel@hooverhullturner.com
Michael A. Dorelli (20862-49)
mdorelli@hooverhullturner.com
HOOVER HULL TURNER LLP
111 Monument Circle, Suite 4400
P.O. Box 44989
Indianapolis, IN, 46244-0989
Tel: (317) 822-4400
Fax: (317) 822-0234

*Counsel for HHT Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the Plaintiff and all registered participants as identified on the Notice of Electronic Filing (NEF) on September 26, 2018.

*/s/ Michael A. Dorelli*