USDC IN/ND case 3:18-cv-00574-JD-APR   document 127   filed 01/16/20   page 1 of 12

FILED
JAN 16 2020
At_____M
ROBERT N. TRGOVICH, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| **Aaron Coates** <br> *Plaintiff* <br><br> v. <br><br> **Valeo Financial Advisors, LLC, et. al.,** <br> *Defendants* | No.: 3:18-cv-000574-JD-APR <br><br> Judge Jon E. DeGuilio <br><br> Magistrate Judge Andrew P. Rodovich |

### PLAINTIFF'S BRIEF IN SUPPORT OF MOTIONS FOR DISQUALIFICATION OF JUDGE AND MAGISTRATE

Plaintiff, Aaron Coates, files this Brief in support of his concurrent and related *Motion for Judge DeGuilio to Disqualify* and *Motion for Magistrate Rodovich to Disqualify*, prior to Coates continuing to pursue his outstanding claim against Hoover, Hull, Turner, LLP ("HHT"), and prior to moving to reopen claims against defendants Andrew Hull ("Hull"), Evan Carr ("Carr"), and Judge Heather Welch ("Welch").

### BACKGROUND

Pro Se Plaintiff, Aaron Coates, filed suit against 37 parties for Qui Tam claims of Civil Rights, Fraud, Forgery, Obstruction of Justice, and Racketeering, and other claims for RICO, Unfair Competition, and Due Process violations. Even the very little evidence attached to Coates's Complaint demonstrates one party, Judge Mary G. Willis, in her former capacity as Chief Administrative Officer for the Indiana Appellate and Supreme Courts unmistakably forged a court order

backdating it 13 days,[1] which returned jurisdiction over Valeo v. Coates in Marion County to Judge Welch. This backdated order gave legal validation to Welch's otherwise late ruling in favor of Valeo on Coates's supposed breach of contract.[2]

On March 25, 2019, this court awarded dismissal for all parties that filed a motion,[3] dismissed all remaining non-dispositive motions,[4] and relinquished jurisdiction over Coates's state claims.

On July 31, 2019, Hull filed an application for Charging Order against Coates and Relevant Financial Advisors, LLC, an entity solely controlled by Coates. [Exhibit 1] Hull filed this application under Cause No. 49D01-1505-PL-015418, the original case of Valeo v. Coates in Welch's court.

On August 6, 2019, Coates emailed Hull stating that Coates was "extremely concerned about [Hull's] filing" and suggested a continuance until mid-September when Hull is back from his annual vacation, so "[Hull] can take a step back and think about [his] options." [Exhibit 2] Hull did not respond directly to Coates, but on 8/23/19, he filed a consented enlargement of time for response to Valeo's Application for Charging Order. [Exhibit 3]

On September 16, 2019, Coates, feeling providential leading yet having no context, sent a text message to Hull. Coates was worried that Hull may be

---

[1] As of 11/26/19, the fraudulent filing is still available online showing that on 9/20/17 at 11:59:33 AM user "abarnes" stamped the denial of Coates TR 53(1) praecipe with a date of 9/7/17 4:30 pm signed by Mary Willis. Metadata shows the file was not created until 9/19/17.

[2] Per Hull's admission to Coates, the contract never existed in entirety. The metadata on Hull's evidence for the second part of the agreement shows it was falsified. Hull advised Coates in the same meeting that the deadline to notify the court for summary judgment had passed. None of this information was discoverable by Coates until after the case had concluded.

[3] The court has not yet set DE 41 (and related) for hearing.

[4] Excludes DE 41 Motion for Default Judgment against HHT who failed to timely respond to Complaint.

2

experiencing some professional struggle, or maybe a personal or family illness. Hull never responded to Coates.

On September 18, 2019, Judge Welch awarded the Charging Order[5] against Coates including the $37,476.96 award to Valeo, attorney fees to Hoover, Hull, Turner LLP of $81,429.43, and $337.97 of expenses, plus interest.[6]

## STANDARD

### Workload and Speedy Administration

N.D. Ind. L.R. 40-1(f)(1) states that "the court may reassign cases among judges if workload and the speedy administration of justice so require."

### Appearance of Bias

28 USC § 455(a) requires disqualification for the *appearance* of partiality, where §455(b)(1) requires a judge to disqualify for *actual* partiality.[7] So it is reasonable that the former is the key standard.

It is a common occurrence for former clerks to appear as counsel before judges, motivating numerous directives and precedent. Guideline moratorium

---

[5] Previously Welch could argue that she was unaware of the fraud leading to her jurisdiction, and then acknowledging the fraud, had reason to vacate all rulings and dismiss the case and sanction appropriate parties. But at this moment, with this case, Welch cannot deny knowledge of her lack of jurisdiction and then entered a ruling for enforceable financial penalty against Coates and related parties. This appears to make her personally liable for the harm in knowingly acting outside her jurisdiction.

[6] It may be that Hull led Welch to believe that Coates would put before her court information she could previously claim to not know, (including information in this matter, and evidence provided to the FBI and the Marion County Prosecutor). Then on 'learning' she could dismiss everything and refer Hull for discipline. Given Hull's extra insight from Coates's communications, it appears he gamed to his benefit and Welch's harm.

[7] Charles Gardner Geyh, Judicial Disqualification (2nd ed. 2010) p. 17.

periods have often been suggested.[8] Numerous occurrences of family representing a party before the judge have occurred. Factoring in a former clerk, who is like family, not as counsel before the court, but as a party to the lawsuit, the potential for appearance of bias is exponentially greater.

Excusably for this court, the ABA recently on September 5, 2019, long after this lawsuit was filed, issued a formal opinion on judicial disqualification.[9] Formal Opinion 488 states, "the ultimate decision of whether to disqualify is committed to the judge's sound discretion."[10] Earlier the opinion suggests that the judge must consider if too strict a disqualification standard would potentially disrupt the administration of justice, such as in a small community or sparsely-populated judicial district.[11]

## Magistrate Judge Materially Affects the Case Outcome

Discussing the importance of the Magistrate, Baker cites the CJRA, which "'emphasized the importance of early involvement by a judicial officer in planning a case's progress and controlling discovery.' By and large, that 'judicial officer' has been the magistrate judge."[12] Baker also states, "In effect, magistrates now exercise

---

[8] *Id.* p. 29
[9] ABA Formal Opinion 488
[10] *Id.* p.3 ¶1.
[11] Id. p. 2 ¶2. MOVE ALL THIS TO ARGUMENTS?? The unusual nature of this lawsuit and previous circumstances beyond the control of this court, created this exact scenario. A large portion of Indiana's legal community could have cause to recuse without any alternative given the previously empty seats. However, with recent appointments
[12] Tim A. Baker, *The Expanding Role of Magistrate Judges in the Federal Courts*, 39 Val. U. L. Rev. 661 (2005). p. 665 http://scholar.valpo.edu/vulr/vol39/iss3/3

4

many of the same powers as federal district judges; they decide motions, hear evidence, instruct juries, and render final decisions in civil and criminal cases."[13]

Given that a magistrate judge has considerable authority to influence the outcome of a case. In any matter where the public would have reason to question the objectivity of the magistrate judge and the fairness of any ruling, it is incumbent on the Magistrate to disqualify. That was apparently true of Magistrate Gotsch. Even a ruling that every judge agrees was proper still has the potential to incite public indignation, especially in a case like this one.

## ARGUMENT

### Disqualification for Relationship Between Parties

It is undeniable that Rodovich and Jack Crawford are extremely close. Even right after Crawford's moral failing ended his political career, Rodovich, identified as "Crawford's lifelong friend" by *Indianapolis Monthly* quotes him as saying,

> We were born the same day, in the same hospital in Hammond, and I've known him all my life. He's simply never been a violent person. He was a skilled prosecutor and is a good guy. *p. 83*

It is just as likely given their extremely closely aligned careers, that Judge DeGuilio and Magistrate Rodovich must be extremely close, even if no public statements prove it to be true. This could just as likely be from their shared involvement and subsequent survival within the Democratic machine of 'The

---

[13] Brendan Shannon, Note, *The Federal Magistrates Act: A New Article III Analysis for a New Breed of Judicial Officer*, 33 WM. & MARY L. REV. 253, 253 (1991) (footnotes omitted).

5

Region' during one of its more tumultuous periods. The prosecuted corruption suggests that survival was dependent on strong alliances. DeGuilio, Rodovich, and Crawford advanced together while being surrounded by numerous investigations, indictments, and convictions of public officials—certainly better than Jay Given.

In the early 1990s, then Heather Culbertson, now Judge Heather Welch clerked for DeGuilio while Lake County Prosecutor, and then externed for Magistrate Rodovich. As recently as 2017, two decades after her clerkships, Welch's public statements seem to suggest that DeGuilio and Rodovich are like family.[14]

Even the most well-founded, undeniably objective ruling, will be ripe for appeal.[15] Numerous parties in this matter have confidently argued that there is no plausible case here, and that Coates is nothing more than a scorned litigant who lost after having a fair trial and only seeks to "harm the reputations of anyone he believes has crossed him"[16] and "impart collateral damage on his targets' employees."[17] So there is certainly no upside, especially with decreasing public confidence in all government, to introducing obvious cause for public suspicion. If this lawsuit is so baseless, then any judge, irrespective of background or leaning, should quickly bring this matter to a conclusion in favor of all defendants, including Welch, while leaving no room for appeal or public question. DeGuilio and Rodovich

---

[14] *Indiana judge co-chairs ABA program aiming to increase diversity in judicial chambers*, The Indiana Lawyer, Stafford, April 18, 2017
[15] Appeal for appearance of bias might only apply toward Welch, letting other parties walk free even if more liable.
[16] Dkt 62 p.2
[17] *Id.*

continuing to hear the matter necessarily worsen the public confidence in final disposition.

DeGuilio and Rodovich certainly must have deliberated on disclosing their relationship with Welch but could have quickly dismissed as obvious that any district judge would have some relationship with any number of the voluminous initial defendants, many being attorneys, judges, or court staff. They could have deduced that Welch almost certainly had judicial immunity, where other parties may not, making any relationship with Welch inconsequential.[18]

**Speedy Administration**

Equally important, at the time of the Complaint filing, both Indiana's Northern District and Southern District had material judicial vacancies. Given the excess burden, and the voluminous information contained in the complaint, and the first impression appearance of the parties, disqualification would be pointless.

During the early months of this matter, the numerous parties fairly attempted to overwhelm the *pro se* plaintiff with numerous and rapid filings, which the court handled adeptly. Currently, only a few matters on the one remaining party[19] are still before the court and seem to be in limbo with the court yet to consider, or set for hearing, having exceeded 12 months.[20]

---

[18] Even if she did not have judicial immunity, because she did not have jurisdiction, and was unaware of the fraud by Willis, then her rulings would not stand and she therefore would have had no liability, at least prior to the Charging Order.
[19] Prior to the coming motion to reopen against Welch, Hull, and Carr for continuing harm that apparently needs to have much more convincing evidence attached.
[20] Dkt. 41 and related (57,58,59)

A fair argument could now be made that there are less vacancies in the Northern District, and likely judges with more open dockets. And that Welch is now a much more central defendant in a much slimmer group making disqualification obviously proper.

**Another Consideration to Disqualify**

Experience suggests that a valid and supported legal basis is a frivolous exercise. Everything previously stated is simply for use for rationale in disqualifying orders, should they choose to offer them, and plausible excuse to avoid conduct concerns for not having disqualified earlier. But disqualification appears to very well be in their best interests, personally and professionally, and to their combined legacy through Welch and their political careers and defense of the working class, along with the party they appear to have the greatest personal interest in.

If Hull schemed as it appears, washing all his dirt onto Welch, then Welch may very well need both of you free to more actively advocate on her behalf behind the scenes, and not just in this small matter. The necessity of an overtly active and direct role on Welch's behalf cannot be open to collateral attack by parties claiming bias. So at least one of you should disqualify, but likely both.[21]

It has always been true that Indy has little respect for anyone living north of US 30. Partisan politicians in Indy do not have any appreciation or respect for how northern Indiana, especially Lake County operates. And they don't appear to care

---

[21] You must be aware of the lion's den of Welch's appointed counsel in this matter.

8

about throwing members of their own party under a bus, especially if from Michiana[22] or The Region. Maybe Welch was wrong to trust Hull. Given that she's from Kokomo, maybe she only appreciates the elitism a little bit, like with Carmel girls swimming.

But for DeGuilio and Rodovich, who survived much bigger political minefields than this one, they might agree that Indy politicians don't appreciate the comradery necessary for that to happen, nor do they appear to respect it. Personally, I don't think they even understand it. They appear to use 'creative' means primarily or even solely to serve exclusively personal ends, even at the expense of their main constituency. Certainly creative methods are necessary to actively oppose the influence of big money interests in Lake County, and a little personal benefit might be tolerated. But if a Lake County Democrat takes a cut, even legally, by caving to big money to the disadvantage the working class, a corruption conviction might be the best possible outcome.

Consider that Defendant Michael Blinn, who previously ran for state office as a Democrat, joined the Indiana AG's office, soon after this court dismissed him from this lawsuit. Most of his cases appear to be PCR, often against prisoners of New Castle. Penitent support of GEO would likely be unacceptable in The Region's Democratic party. A $16,600 donation by Bomark Management Co (e.g. CourtCall owners) to Donnelly's campaign isn't close to the millions GEO gave to GOP

---

[22] Yes, I'll say it, because I can. Assume Hill did everything and more that is asserted. I certainly do not condone it. Yet plenty of politicians have done far worse and walked away without any noticeable political scars when supported by their party. He appeared to be a threat to the Indiana Republican establishment.

campaigns with expected results. As you are well aware, Hull and Blinn, both registered Democrats, represented IBM while allowing damaging details of GOP political favors to stay private save Judge Dreyer's best efforts. If there were back room commitments, given Hull's self-protection, can these people really be trusted by Welch? Do top politicians of either party in central Indiana actually represent their constituents?

For the past 5 years one of my many motivations has been envisioning that this will send a message to those in Indy, to have a greater respect for northern Hoosiers, even if I fail (as I expect). Maybe they will at least pause to consider their northern opposition could be resilient, determined, capable, and competent. It seems, with what Hull has done here, and how this court promised the sidewalk, that having a far deeper understanding of Indiana politics, might not help. I was dreaming of fairer calls for basketball state, or that higher state courts wouldn't favor Indy companies over northern ones. We may have all been wrong. So disqualify to work openly to save Welch. I won't complain as long as the end result protects the powerless from the powerful. After all, even with its clear failings and corruption, Lake County Democrats were always first about fighting against the wealthy on behalf of the working class even if needing to be creative. If this court's hands are tied from defending its legacy and a better future for working class Hoosiers by continuing to hear this matter, please step aside. Maybe GEO should have some liability for Dawn Dalton's injuries. Probably not in any Indiana state court, justice deferred and all. Or maybe it's better that their millions continue to go

towards political donations and lobbying for higher incarceration rates. That's certainly what northern Indiana chose in 2016 and why Judge Willis gets a pass.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully moves both Judge DeGuilio and Magistrate Rodovich disqualify themselves.

*Respectfully submitted,*

Aaron S. Coates, Plaintiff
18709 Taft Ct.
Goshen, IN 46528
T: 574-206-4454
E: acoates@relevantfinancial.com
/d/ January 15, 2020

## CERTIFICATE OF SERVICE

I hereby certify that on January 15, 2020, I filed the foregoing with the Clerk of the Court by USPS Priority Mail. Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system.

**Hoover, Hull, Turner, LLP**
Michael A. Dorelli
modorelli@hooverhullturner.com

David J. Hensel
dhensel@hooverhullturner.com

**Barrett McNagny, LLP**
Kevin K. Fitzharris
kkf@barrettlaw.com

**Taft Stettinius & Hollister LLP**
Michael L. Meyer, Esq.
mmeyer@taftlaw.com

**Husch Blackwell LLP**
Aleksandra Rushing
aleks.rushing@huschblackwell.com

John W. Borkowski
john.borkowski@huschblackwell.com

**Office of Attorney General Curtis Hill**
Kelly Cochran
kelly.cochran@atg.in.gov

Joshua Lowry
joshua.lowry@atg.in.gov

**Office of Corporation Counsel**
Adam S. Willfond
adam.willfond@indy.gov

Daniel P Bowman
daniel.bowman@indy.gov

Grant E. Helms
grant.helms@indy.gov

**Kightlinger & Gray, LLP**
Louis J. Britton
lbritton@k-glaw.com

*/s/ Aaron S. Coates/*

Aaron S. Coates, Plaintiff
18709 Taft Ct.
Goshen, IN 46528
T: 574-206-4454
E: acoates@relevantfinancial.com